# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | No. 3:03cr227 |
| | : | 3:07cv1819 |
| v. | : | (Judge Munley) |
| | : | |
| **JESSE BOYD, a/k/a JET,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the court for disposition is the motion to vacate, set aside or correct sentence filed pursuant to 28 U.S.C. § 2255. The matter has been fully briefed and is ripe for disposition.

**Background**

A federal grand jury sitting within the Middle District of Pennsylvania returned a one count indictment against Defendant Jesse Boyd on August 26, 2003. The indictment charged him as follows: On or about June 19, 2003, in the Middle District of Pennsylvania and elsewhere, the defendant, also known as "Jet," knowingly and intentionally distributed and possessed with intent to distribute eighteen (18) grams or more of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1). (See Doc. 1, Indictment).

On January 28, 2004, the government filed a plea agreement entered into by the United States and the defendant. (Doc. 23). On February 5, 2004, the defendant pled guilty to the indictment pursuant to the terms of the written plea agreement. (Doc. 27). Defendant appeared in court for sentencing on September 28, 2004, but he was not sentenced on that day. (Doc. 72). Instead, the court rejected the guilty plea. (Id.).

Defendant entered an unconditional guilty plea to the indictment on February 1, 2005. (Doc. 96). The court sentenced defendant on March 22, 2005 to a term 188 month-term of imprisonment, a three-year term of

supervised release and a $100.00 special assessment. (Doc. 106). Defendant filed a direct appeal to the Third Circuit Court of Appeals. (Doc. 108). The Third Circuit affirmed the judgment of conviction and sentence on March 22, 2006. (Doc. 116). Defendant filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on October 2, 2006. Boyd v. U.S., 549 U.S. 922 (2006). Defendant then filed the instant motion.[1]

Generally, the basis of defendant's complaint is that the indictment he pled guilty to indicated that the quantity of cocaine involved was 18 grams or more. The government provided evidence, however, that actually 11,700 grams of powder cocaine and 300 grams of crack cocaine were involved in the defendant's criminal enterprise. This greater quantity of drugs affected the defendant's sentence. Therefore, defendant attacks the basis for the government's calculation of the amount of drugs involved.

**Standard of review**

Defendant moves for relief under 28 U.S.C. § 2255, which reads in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which

---

[1]Upon receipt of the defendant's *pro se* motion, the court issued a notice of election to the defendant pursuant to United States v. Miller, 197 F.3d 644 (3d Cir. 1999). (Doc. 122). Defendant elected to proceed with the case as filed, that is as a motion made pursuant to 28 U.S.C. § 2255. (Doc. 125).

2

> imposed the sentence to vacate, set aside or correct the sentence.
>
> ...
>
> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255.

The motion raises eight issues. We will address each in turn.

## 1. Ineffectiveness of counsel with regard to challenging the validity of defendant's February 5, 2004 guilty plea

Defendant first argues that his third appointed counsel was ineffective in failing to challenge the validity of his February 5, 2004 guilty plea based upon the ineffectiveness of his second appointed counsel.

The United States Supreme Court has found that "'the right to counsel is the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. In order to prove that his counsel was deficient at trial or sentencing, a defendant must convince a court of two factors: "[f]irst, the defendant must show that counsel's performance was deficient[,] . . that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Substandard lawyering is not enough to obtain relief, however: "[s]econd, the defendant must show that the deficient performance prejudiced the

3

defense" by demonstrating that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Relief is only available to defendants who make "both showings." Id. In sentencing, "prejudice exists where the deficient performance affected a defendant's sentence." United States v. Hankerson, 496 F.3d 303, 310 (3d Cir. 2007).

Specifically in the guilty plea setting, a defendant must establish "that (i) his or her counsel's representation fell below an objective standard of reasonableness demanded of attorneys in criminal cases; and (ii) there is a reasonable probability that, but for counsel's errors, he or she would have proceeded to trial instead of pleading guilty." United States v. Nahodil, 36 F.3d 323, 326 (3d Cir.1994).

An examination of the factual background of this issue is important. On January 28, 2004, plaintiff entered into a written plea agreement. At the time that he entered into his first guilty plea, defendant was represented by Attorney Deborah Albert-Heise. Defendant agreed to plead guilty to the one-count indictment that charged him with a violation of 21 U.S.C. § 841(a)(1), distribution of cocaine, a schedule II controlled substance. (Doc. 23). The plea agreement did not specify the amount of drugs involved, but the indictment indicated that the amount of controlled substance involved is "18 grams or more." (Doc. 1, Indictment).

At the initial guilty plea, the United States indicated that the defendant traveled weekly from Buffalo, New York to the Stroudsburg, Pennsylvania area to sell cocaine. (Doc. 56, Notes of Testimony (hereinafter "N.T.") Change of Plea February 5, 2004 at 14). He would not bring the drugs with him from Buffalo, but would rather obtain fifty (50) to

one hundred (100) grams of cocaine from a source in Pennsylvania each week. (Id.). Defendant engaged in these trips from Buffalo for the purpose of selling cocaine from at least 1999 until the date of his arrest in 2003. (Id.). At the February 5, 2004 plea, the defendant admitted on the record to bringing 50 to 100 grams of cocaine weekly to the Stroudsburg area from 1999 through the point of his arrest in 2003. (Id. at 13-14).

Specifically, the Assistant United States Attorney, Todd Hinkley, indicated as follows:

> During processing back at the police station, Mr. Boyd stated that he normally does not bring a large quantity of cocaine with him from Buffalo, but rather would contact a local supplier from Stroudsburg when he arrives in the area. Mr. Boyd indicated that he obtains between 50 and 100 grams of cocaine from this source on a weekly basis.
> THE COURT: How much?
> MR. HINKLEY: Between 50 to 100 grams of cocaine from the source on a weekly basis. The Defendant has been traveling from Buffalo, New York to the Poconos for the purpose of selling cocaine since at least 1999 up until the point of his arrest. I believe that would be at least the gist of what the evidence would show if we went to trial.
> THE COURT: Mr. Boyd, I want to ask you, specifically, do you admit that you did the things that Mr. Hinkly said you did?
> MR. BOYD: Yes.
> THE COURT: And are you the person identified as Jet or also know[n] as Jet?
> MR. BOYD: Yes.
> THE COURT: And has anyone persuaded you, induced you ,threatened you, coerced you in any way to enter your guilty plea?
> MR. BOYD: No.
> THE COURT: You're doing this of your own free will?
> MR. BOYD: Yes.

(N.T. Change of Plea, Feb. 5, 2004 at 14-15).

The court rejected this guilty plea on September 28, 2004. (Doc. 72).[2]

Defendant ultimately pled guilty again approximately a year later on February 1, 2005. (Doc. 96). On March 22, 2005, the court sentenced the defendant. (Doc. 106). Testimony was taken at the sentencing in order for the court to determine the amount of controlled substance involved in this case. Some of the testimony was based upon statements made by a confidential informant. (N.T. 3/22/05, sentencing, at 18-21). This confidential informant (hereinafter "CI") placed the defendant in Stroudsburg as far back as 1999. (Id. at 19). The CI met the defendant at a crack house in 1999 and then had no more contact with him until 2002. (Id.) In 2002, for a six-week period, the CI obtained between 100 and 150 grams of crack cocaine from the defendant every other week for resale in the Monroe County, Pennsylvania area. (Id.).

Defendant asserts that he only made the admissions regarding the quantity of drugs at his initial guilty plea because of the ineffectiveness of his counsel. He contends that the CI the government utilized also had criminal charges against her.[3] His counsel was ineffective because, according to the defendant, she not only represented the defendant but she also represented the confidential informant in her case. The attorney

---

[2] The basis for rejecting the plea was that the defendant attempted to unilaterally revoke two parts of his written plea agreement by not agreeing to waive his rights under Blakely v. Washington, 124 S.Ct. 2531 (2004). (Doc. 76, Memorandum and Order dated October 22, 2004).

[3] The record does not indicate the identity of the confidential informant. We shall refer to this individual with the feminine pronouns for purposes of clarity as that is the manner in which the defendant refers to her.

sought to ensure that the confidential informant got the benefit for cooperating fully with the government and therefore, she convinced the defendant to agree to all the information that the confidential informant provided.

We are unconvinced by the defendant's argument. The statements at issue were made by the defendant himself not by a confidential informant. In open court, he admitted the facts that were put forth by the government.

Moreover, defendant has not established a valid ineffectiveness claim against Attorney Albert-Heise. As noted above, in order to establish ineffectiveness with regard to a guilty pleas, defendant must establish that there is a reasonable probability that, but for counsel's errors, he would have proceeded to trial instead of pleading guilty." Nahodil, 36 F.3d at 326. Defendant does not allege in any of his briefs that absent the attorney's alleged ineffectiveness, he would have proceeded to trial instead of pleading guilty. In fact, after the initial plea was rejected by the court, the defendant, who was represented by different counsel, pled guilty yet again.[4]

Regardless, even if the first plea was constitutionally infirm, and the court should not have relied upon defendant's admissions when he was sentenced, there was another source for this information provided at the sentencing hearing. At the sentencing hearing the investigating officer, Federal Bureau of Investigation Agent Kevin Wevodau, testified. He indicated that an informant acknowledged meeting the defendant in 1999

---

[4]Defendant also moved the court to reconsider withdrawing the initial plea. (Doc. 73).

7

at a crack house in Stroudsburg, Pennsylvania. (Doc. 111, N.T. sentencing, 5/19/05). The individual indicated that at that time, the defendant was providing powder cocaine to people within the crack house. (Id.). Wevodau also indicated that the defendant admitted to distributing 50 to 100 grams of cocaine on a weekly basis. (Id. at 17). Therefore, Wevodau testified as to all the information that was included in the allegedly faulty guilty plea admissions.

Accordingly, for all of these reasons we will deny defendant's first claim.

**2. February 1, 2005 - constitutionality**

Defendant's second argument deals with the sentencing that followed his second guilty plea. He asserts that his counsel was ineffective for not exploring the range of penalties based on facts admissible at sentencing. These facts included defendant's admissions at the February 2004 guilty plea. Defendant argues that his attorney had advised him that these admissions would not be admissible at his sentencing. This failure to provide appropriate advice misled the defendant to believe that his base offense level would be calculated on eighteen (18) grams of cocaine specified in the indictment instead of the 11,700 grams of powder cocaine and 300 grams of crack cocaine considered by the court at sentencing.

Again we apply the standard for ineffectiveness as set forth above. Defendant must establish that (i) his counsel's representation fell below an objective standard of reasonableness demanded of attorneys in criminal cases; and (ii) there is a reasonable probability that, but for counsel's errors, he would have proceeded to trial instead of pleading guilty." Nahodil, 36 F.3d at 326.

8

We are unconvinced by the defendant's arguments. Defendant's counsel ably argued that the statements made at the initial guilty plea should not have been considered at the sentencing. Despite counsel's presentation of these issues, the court disagreed. (Doc. 111, N.T. of sentencing of March 22, 2005, at 13, 54-55). Accordingly, we do not find ineffective assistance of counsel with regard to this issue.[5]

**3. February 1, 2005 guilty plea - court participation in plea discussion**

Next, defendant attacks his February 1, 2005 guilty plea as invalid because the court improperly participated in the plea discussion. The essence of the defendant's argument is that the court improperly withdrew

---

[5]To the extent that defendant is dissatisfied with his sentence, he indicated during his guilty plea on February 1, 2005 that he understood that the court was not bound to any recommendation on sentencing agreed to by his counsel and the government's counsel and that if the court declined to impose a sentence that was recommended by his counsel or the prosecutor, he would not be allowed to withdraw his plea. (N.T. Guilty Plea hearing, 2/01/05 at 13). The defendant further indicated that no one had promised him what the sentence would be in this case. (Id.).

In the plea agreement that he initially signed it indicates that the maximum penalty he could receive was twenty years, or 240 months, in prison. (Doc. 23, Plea Agreement, ¶ 1). Additionally, he was informed at his initial guilty plea that the maximum he could receive was twenty years imprisonment. (N.T. guilty plea February 5, 2004 at 17). In a "Statement of Defendant" filed on February 5, 2004, defendant again indicated that he understood that he could be sentenced to twenty (20) years of imprisonment. (Doc. 30). As noted above, he was sentenced to 188 months, which was subsequently reduced to 151 months. Therefore, he was in fact sentenced below the maximum that he was informed he could be sentenced.

9

his original guilty plea.[6] First, we note that defendant does not raise this claim as ineffectiveness of counsel. In fact, the record indicates that his counsel did object to the withdrawal of his initial guilty plea, and the court issued a memorandum on the subject. (Doc. 76, Memorandum of 10/22/04).

Second, defendant has waived this issue. Issues that are not raised on defendant's direct appeal are not properly litigated under a section 2255 motion unless defendant can demonstrate cause for not raising the issue and prejudice. United States v. Frady, 456 U.S. 152, 167-69 (1982). Defendant did not raise this issue on direct appeal and has not even attempted to demonstrate cause and prejudice. Thus, this claim will be denied.[7]

**4. Ineffectiveness of counsel at sentencing hearing**

Defendant also argues that his counsel provided ineffective assistance of counsel at "every critical stage of the proceedings, which includes sentencing." (Doc. 121, Defendant's brief at 48).

First, defendant argues that his mother Carletta Livingston, could have provided the court with pertinent information regarding defendant's upbringing that would have provided a legal mitigation on his sentence. Defendant admits in his brief, however, that Ms. Livington spoke of her concerns to the court at the sentencing hearing, and she also spoke to the

---

[6]Defendant's arguments are internally inconsistent. He asserts in the previous issues that his counsel was ineffective during his initial guilty plea. Here, he asserts that it was improper for the plea to have been withdrawn.

[7]Moreover, the court did not participate in any way in plea negotiations.

probation officer who prepared the Presetence Report. (Id. at 49). Further, defense counsel highlighted defendant's background in his argument to the court. (N.T. sentencing, 3/22/05 at 56-57).

Defendant argues that had counsel prepared an argument for a departure from the sentencing guideline range based on his lack of youthful guidance, "there is a reasonable probability that the sentence imposed would have been different." (Doc. 121, Defendant's brief at 51).

Defendant's position is inaccurate. As set forth above, the court was aware of the defendant's background and it was taken into consideration in fashioning the sentence. In fact, the defendant was sentenced at the low-end of the guideline range. The pre-sentence report revealed the personal and family data that the defendant asserts his attorney was ineffective for not addressing.(See Presentence Investigation Report, ¶ ¶ 45 - 54) Accordingly, this claim will be denied.

**5. Ineffectiveness of counsel regarding the scoring of criminal history points**

Defendant additionally argues that his counsel was ineffective for failing to argue that several of his prior convictions occurred so far in the past (over ten years) that they were improperly considered in determining his criminal history points.

Defendant complains that arrests dating back to 1990 were used in computing his criminal history points. He asserts that sentences imposed prior to ten years to the commencement of the instant offence should not be counted in his criminal history score. Defendant asserts that his current offense commenced in 2004, and therefore a crime dating to 1990 is not allowed. We are unconvinced.

11

As set forth above, evidence that was properly admitted at the sentencing indicated that the instant offense commenced in 1999, which is within ten years of a crime committed in 1990 and sentenced in 1991.[8] Thus, defendant is not entitled to relief on this argument.

**6. Reduction on the drug quantity table for quantities of crack cocaine**

Defendant next argues that the United States Sentencing Commission has amended the sentencing guidelines allowing for a two level reduction for crack cocaine offense. As the government points out, however, a section 2255 motion is not the proper vehicle to raise an issue with regard to these amendments. Such an issue should be raised via a motion pursuant to 18 U.S.C § 3582(c). In fact, subsequent to the filing of the instant motion, defendant filed a counseled motion to reduce sentence with regard to the crack cocaine offense. (Doc. 141). Accordingly, this issue will be denied as not properly raised in a section 2255 motion and because defendant has also raised this issue in a separate motion. [9]

**7. Double Jeopardy**

Defendant's seventh issue deals with double jeopardy. Defendant argues that the State of Pennsylvania was prosecuting him on drug

---

[8]In support of this argument, defendant raises many of the same arguments he raised above with regard to the CI's testimony. We have already addressed those arguments and we need not address them again. Moreover, to the extent that defendant argues that the court could not use the statements he made at his initial guilty plea hearing, the investigating officer testified to the same facts at the sentencing hearing and the court could have accepted those facts without referencing the original plea.

[9]This motion has been ruled on by the court, and the defendant's sentence has been reduced by approximately thirty-seven months. (Doc. 153, order reducing sentence).

charges. Then a federal indictment was handed down against him, and the state government filed a petition to nolle prosequi the state case. Defendant asserts that the federal government was acting merely as a surrogate of the state government.

Defendant did not raise this issue on direct appeal. Issues that are not raised on defendants direct appeal are not properly litigated under a section 2255 motion unless defendant can demonstrate cause for not raising the issue and prejudice. United States v. Frady, 456 U.S. 152, 167-69 (1982). Defendant did not raise this issue on direct appeal and has set forth cause and prejudice. Thus, this claim will be denied.

**8. Evidentiary hearing**

Lastly, defendant argues that he is entitled to an evidentiary hearing to further develop his claims of ineffectiveness. We disagree. We have found, as a matter of law, that none of petitioner's claims have merit. Accordingly, no need exists for a hearing to determine the facts surrounding these issues.

**Conclusion**

For the reasons set forth above, we find no merit to any of the defendant's claims. We will thus deny his section 2255 motion. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | No. 3:03cr227 |
| | : | 3:07cv1819 |
| v. | : | (Judge Munley) |
| | : | |
| **JESSE BOYD, a/k/a JET,** | : | |
| Defendant | : | |

## ORDER

**AND NOW**, to wit, this 29th day of May 2009, the defendant's motion filed pursuant to 28 U.S.C. § 2255 is hereby **DENIED**. Based upon the reasoning in the our accompanying memorandum, we decline to issue a certificate of appealability. See 28 U.S.C. § 2253(c) and 3d Cir. LAR. 22. The Clerk of Court is directed to close case number 3:07cv1819.

**BY THE COURT:**

**s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court**

14